**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
AML@lagomarsinolaw.com
Taylor@lagomarsinolaw.com

**NAQVI INJURY LAW**
PAUL G. ALBRIGHT, ESQ. (#14159)
9500 W. Flamingo Rd., #104
Las Vegas, Nevada 89147
Telephone: (702) 553-1000
Facsimile: (702) 553-1002
paul@naqvilaw.com
*Attorneys for Plaintiffs Amanda Marie Corbala,*
*William Kelley, and Steve Scow, Jr.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AMANDA MARIE CORBALA, individually and as heir to the ESTATE OF CRUZITO TANK RUIZ; and WILLIAM KELLEY and STEVE SCOW, JR. in their capacities as Special Administrators and Personal Representatives of the ESTATE OF CRUZITO TANK RUIZ,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; TERESA HOLVE, in her individual capacity,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, AMANDA MARIE CORBALA, individually and as heir to The Estate of Cruzito Tank Ruiz, and WILLIAM KELLEY and STEVE SCOW, as Special Administrators and Personal Representatives of the ESTATE OF CRUZITO TANK RUIZ (collectively "Plaintiffs"), by and through their attorneys ANDRE M. LAGOMARSINO, ESQ. and TAYLOR N. JORGENSEN, ESQ. of LAGOMARSINO LAW, and PAUL G. ALBRIGHT, ESQ.

of NAQVI INJURY LAW, and hereby file the following *Complaint and Demand for Jury Trial*.

## JURISDICTION AND VENUE

1.     This action arises under the Constitution and laws of the United States of America, specifically 42 U.S.C. § 1983, and the Constitution and laws of the State of Nevada. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

3.     Venue is proper in the District of Nevada under 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in Clark County, Nevada.

## PARTIES

4.     Cruzito Tank Ruiz ("CRUZITO") was an 8-year-old student attending John C. Bass Elementary School, which is located within the CLARK COUNTY SCHOOL DISTRICT.

   a.     CRUZITO was a vulnerable child within the meaning of NRS 41.1395(4)(e), which defines a "vulnerable person" as a person who has "a physical or mental impairment that substantially limits one or more of the major life activities of the person" and who has "a medical or psychological record of the impairment or is otherwise regarded as having the impairment," and which includes, without limitation, a person who has a severe learning disability.

   b.     On January 8, 2025, CCSD documented that CRUZITO's Individual Education Program ("IEP") "ELIGIBILITY CATEGORY" was "Specific Learning Disability" with an "ELIGIBILITY DATE" of April 19, 2023. The IEP reflects that, at a "Multidisciplinary Team meeting" on April 19, 2023, the team identified "deficits with letter names, sounds and reading fluency, as well as math concepts and computation and written expression." CCSD further documented that CRUZITO required substantial special education services delivered in a resource setting, including "written expression (150 minutes a week in Resource), reading (200 minutes a week in Resource) and math (150 minutes a week in Resource)." The placement justification states that CRUZITO "requires intervention in a highly structured setting to allow for multiple opportunities for practice of reading foundation skills, math and writing skills," and that

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052

Telephone: (702) 383-2864    Facsimile: (702) 383-0065

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052

Telephone: (702) 383-2864   Facsimile: (702) 383-0065

"Individual skills need to be learned in a structured environment without the distraction of a large group." CCSD also documented that "Cruz exhibits delays in academic skills, which have impeded his ability to derive non-academic benefit within the general education setting despite intervention in his general education classroom environment." His IEP further provides that "Cruz will use assistive technology to provide read aloud options for summative assessments," and that "Cruz will use assistive technology to dictate his written responses, then he will hand write them."

c.   School health records dated February 16, 2023 reflect that CRUZITO was "being evaluated for special education services," and that his "Medical History is significant for school learning problems and special education services," and significant for "Traumatic Brain Injury (TBI)." Medical records further document that CRUZITO sustained a traumatic brain injury at age three that required a tracheostomy and gastrostomy tube placement for several months, and include past medical history entries reflecting facial paralysis following TBI. CRUZITO demonstrated immense resilience, having survived that TBI and the associated need for a tracheostomy and feeding tube.

d.   At all relevant times, and prior to the incident that forms the basis of this complaint, CRUZITO had a documented physical and mental impairment that substantially limited major life activities, including learning, and had a medical and educational record of those impairments.

e.   On February 25, 2025, CRUZITO entered the school cafeteria for lunch, where he suffered an airway obstruction while eating pineapple. While consciously choking, CRUZITO stood up and approached a school official, Defendant TERESA HOLVE, signaling for help with his hands to his mouth and displaying obvious signs of physical distress, including "puffy cheeks." Another student told HOLVE that CRUZITO was sick. The screenshots of surveillance footage below accurately reflect the sequence of events that occurred.

. . .

. . .

. . .

 

f. Rather than providing aid consistent with her mandatory CPR/AED training and immediately summoning adult assistance, Defendant HOLVE committed an affirmative act that created and increased a mortal danger to CRUZITO: she directed and instructed the choking child to leave the populated cafeteria and proceed to an isolated area in the boys' restroom. Rather than providing the aid mandated by her training, Defendant HOLVE committed an affirmative act that created a mortal danger to CRUZITO: she directed and instructed the choking child to leave the populated cafeteria and proceed to an isolated area in the boys' restroom. After Defendant HOLVE sent CRUZITO to the bathroom, she ignored him.



. . .



g.    The bathrooms in elementary school lunchrooms are designed for use by children, not adults. Adult staff at Bass Elementary had dedicated bathrooms designed to be used by adults.

h.    Defendant HOLVE did not radio for help, call for the school nurse, alert any nearby adult staff, or contact emergency services before directing CRUZITO out of sight; instead, she sent him alone into the boys' restroom and did not initiate any emergency response.

i.    Defendant HOLVE'S order to go to the bathroom stripped CRUZITO of access to the adults and medical resources present in the lunchroom. Doing as he was instructed, CRUZITO followed Defendant HOLVE'S directive and walked into the boys' restroom alone, where he eventually collapsed and turned blue. Other staff were not notified of CRUZITO's condition in the boys' restroom for approximately five minutes after Defendant HOLVE directed him there. Ultimately, staff were notified by students of CRUZITO's condition. Other staff called 911 and emergency responders came to the scene.

j.    CRUZITO suffered a catastrophic "anoxic brain injury secondary to cardiac arrest," leading to his death on March 2, 2025. Below is a photo from Plaintiff CORBALA's Facebook page that she posted after he passed away.



LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

5. Plaintiff AMANDA MARIE CORBALA is the natural mother of decedent CRUZITO TANK RUIZ. She brings this action individually to redress the deprivation of her substantive due process liberty interest in the companionship and society of her child under the Fourteenth Amendment to the United States Constitution, and she also brings Nevada claims in her capacity as an heir to the ESTATE OF CRUZITO TANK RUIZ. CRUZITO and Plaintiff CORBALA maintained a close, loving parent-child relationship characterized by frequent contact, emotional support, and mutual reliance. Given CRUZITO's documented learning disability and history of traumatic brain injury, CRUZITO relied on his mother for advocacy, guidance, and assistance addressing his educational and medical needs. As a direct and foreseeable result of the acts and omissions alleged, Plaintiff CORBALA has been permanently deprived of her child's companionship and society. Below is a picture of Amanda and her son, Cruzito.



6. Plaintiffs STEVE SCOW, JR. and WILLIAM KELLEY were both appointed as Special Administrators and Personal Representatives by the Eighth Judicial District Court on November 7, 2025 (Case No. P-25-127085-E) for Decedent CRUZITO TANK RUIZ and THE ESTATE OF CRUZITO TANK RUIZ. SCOW and KELLEY are the proper parties in interest and are permitted to bring this lawsuit, and do bring this lawsuit, and assert claims on behalf of THE ESTATE OF CRUZITO TANK RUIZ. SCOW and KELLEY bring claims for violations of CRUZITO's civil rights under the Nevada and United States Constitutions. SCOW and KELLEY also bring Nevada state claims which include damages for medical bills, conscious pain and suffering, and double

damages under NRS 41.1395.

7. Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is a political subdivision of the State of Nevada. CCSD is the employer of DEFENDANT HOLVE and is responsible for the policies, practices, and supervision at John C. Bass Elementary School. To the extent required, CCSD is also named pursuant to NRS 41.0337 and NRS 41.031.

8. Defendant TERESA HOLVE was, at all times relevant, employed by CCSD as a "Title I Specialized Programs Teacher Assistant III" at John C. Bass Elementary School. She is sued in her individual capacity. HOLVE is the school official identified in surveillance footage and police reports who interacted with CRUZITO, and observed him in obvious distress, prior to ordering him to go to the boys' restroom. Despite possessing mandatory CPR/AED certification and observing CRUZITO with "puffy cheeks" and hands to his mouth, and obviously choking, Defendant HOLVE affirmatively directed CRUZITO to leave the safety of the supervised cafeteria and go to the isolated boys' restroom. In so directing CRUZITO, Defendant HOLVE knew that CRUZITO was in health crisis, but ignored the risk to CRUZITO of being left alone. Specifically, Defendant HOLVE observed, and was aware, and was further made aware, that CRUZITO was struggling. Yet, Defendant HOLVE intentionally put CRUZITO in even more danger by isolating him to the bathroom where there were no adults, no supervision, and nobody to watch and help CRUZITO. Defendant HOLVE left CRUZITO completely unprotected against a risk of choking that she knew about. Defendant HOLVE was deliberately indifferent to the risk of harm to CRUZITO. In a further display of deliberate indifference to the child's medical crisis, Defendant HOLVE admitted to law enforcement that after directing CRUZITO into isolation, she simply went back to attending to her class and decided not to check on CRUZITO's welfare in the bathroom.

**GENERAL ALLEGATIONS OF LAW: STATE-CREATED DANGER**

9. While the State generally has no duty to protect individuals from private violence or accidents, a clearly established exception exists under the State-Created Danger Doctrine.

10. Under the Fourteenth Amendment to the United States Constitution, and Article 1, Section

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

8 of the Nevada Constitution, a government employee is liable if she affirmatively places a Plaintiff in a position of actual, particularized, or even heightened, danger that the Plaintiff would not have otherwise faced.

11. Liability attaches when: (a) the Defendant commits an affirmative act (creating or exposing the Plaintiff to danger); (b) the affirmative act creates an actual, particularized, or even heightened, danger; (c) the ultimate injury to the Plaintiff is foreseeable; and (d) the Defendant acts with deliberate indifference to a known or obvious danger.

12. Furthermore, it is clearly established that hampering an individual's access to emergency treatment constitutes a substantive due process violation when coupled with an affirmative act. Even if the initial danger (choking) was not state-created, a state actor's subsequent affirmative conduct that isolates the victim or delays aid violates the Due Process Clause. This principle has long been clearly established in the Ninth Circuit where state actors affirmatively isolate a person in medical distress or otherwise impede access to emergency medical assistance.

13. Additionally, a local government entity is liable under 42 U.S.C. § 1983, pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), when its failure to train or supervise employees amounts to deliberate indifference to the rights of those with whom the employees interact. Liability attaches when the need for specific training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the entity can reasonably be said to have been deliberately indifferent to the need. Specifically, where a "Specialized Programs Teacher Assistant" is required to supervise vulnerable students, handle "crisis situations," and "administer CPR," the entity's failure to train that the employee should not isolate a child with a life-threatening medical emergency constitutes a policy of deliberate indifference. This training deficiency serves as the "moving force" behind the constitutional violation when it causes an employee to affirmatively direct a choking child away from safety.

### FACTUAL ALLEGATIONS

14. CRUZITO was a "vulnerable person" under NRS 41.1395(4)(e).

15. CRUZITO relied on school staff for safety and supervision.

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

16. Defendant HOLVE was employed as a "Specialized Programs Teacher Assistant III."

17. Defendant HOLVE's job description explicitly required her to possess a "Current CPR/AED certificate," which required actual knowledge of the universal signs of choking and airway obstruction protocols.

18. One of Defendant HOLVE's expectations in the course and scope of her position was that she was required to have "Knowledge of CPR/AED and Universal Precautions."

19. On February 25, 2025, at approximately 11:09 AM, CRUZITO was eating lunch in the cafeteria at John C. Bass Elementary School.

20. Before 11:20 AM, CRUZITO was eating pineapple when he began to choke according to witness Adin Dong.

21. At approximately 11:20:00 AM, surveillance footage shows CRUZITO in clear distress. He is seen slapping his back between his shoulder blades and tapping his back to signal friends for help. The police officer who observed the surveillance notes that CRUZITO is choking at this time.

22. CRUZITO then stood up, held his hands to his mouth (a sign of choking) and approached Defendant HOLVE. Another student approached Defendant HOLVE with CRUZITO and verbally warned HOLVE that CRUZITO was feeling sick.

23. Defendant HOLVE admitted to police that she saw CRUZITO approach her and specifically observed his cheeks were "puffy."

24. Despite possessing mandatory CPR training and observing obvious signs of airway obstruction, HOLVE intentionally and consciously decided not to assess CRUZITO's airway.

    a. This was not a split-second decision made under competing obligations. Defendant HOLVE had time and opportunity to deliberate and to take reasonable steps to protect CRUZITO, including summoning the school nurse, calling out for nearby adult assistance, directing another adult to remain with CRUZITO, or calling 911. Instead, she chose to direct him out of sight into isolation and did not initiate any emergency response.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

25. Instead, acting with deliberate indifference, HOLVE committed the affirmative act of removing CRUZITO from the presence of adults in the cafeteria and instructing him to go to the boys' restroom.

26. Surveillance footage captures HOLVE performing a physical gesture: she lifts her arm and directs CRUZITO to his left and toward the boys' restroom.

27. On the day of the incident, HOLVE wrote "I don't remember releasing either boys for the bathroom but could have due to releasing many kids each day for the bathroom." In the same statement, HOLVE wrote "I remember talking with both boys and didn't notice either in distress and neither mentioned any distress to me." The next day, Defendant HOLVE changed her story.

28. The next day, HOLVE wrote a different account of what happened. She said one boy said the other (CRUZITO) wasn't feeling well. She further wrote that CRUZITO was "not feeling well [and] had his cheeks puffed out a bit so [she] thought he needed to spit some liquid out." She continued, "I started to say "go to the bath and then stoped [*sic*] said "go to the trash can not the bathroom and if needed someone will take you to Ms. Laura (Nurse's office) while they went to trash can I went back to my class just 3-4 feet away."

29. The surveillance reveals CRUZITO choking at the table before, during and after interacting with HOLVE. Students reported that CRUZITO was choking at the table. Students reported that CRUZITO vomited at the table. HOLVE can be seen wiping up liquid and/or food from the area where CRUZITO was sitting after she sent him to the bathroom. The direction HOLVE directed CRUZITO was toward the bathroom. Contrary to HOLVE's second statement, but consistent with her first statement, CRUZITO never went to the trash can and instead went to the bathroom as directed. Consistent with the puffy cheeks that Ms. HOLVE observed, one first responder observed "a ton" of food in CRUZITO's mouth and another commented on the "bunch" of food observed in his mouth as well.

30. By affirmatively ordering CRUZITO to leave the cafeteria and go to the bathroom, HOLVE affirmatively separated him from adult supervision, AED access, CPR, and trained staff during the critical window for intervention.

31. At 11:21:20 AM, adhering to Defendant HOLVE's instruction, CRUZITO walked away from safety and entered the boys' restroom alone. On the way to the bathroom, he was slapping himself in the back in an obvious attempt to clear his airway.

32. CRUZITO's injury, asphyxiating to death because of airway obstruction, was foreseeable. It is a known and obvious consequence that isolating a child exhibiting signs of choking will prevent rescue and lead to hypoxia, cardiac arrest, and death.

33. A reasonable school employee with HOLVE's required training would have known that directing a choking child out of sight hampers access to emergency treatment. Alternatively, it is common knowledge that a choking person needs help, not to be isolated. Even HOLVE thought CRUZITO might need medical attention from the nurse.

34. From approximately 11:21 AM to approximately 11:26 AM, CRUZITO suffered extreme conscious pain, terror, and air hunger while isolated in the restroom.

35. Minor students entered the restroom and found CRUZITO on the floor. They observed him twitching and his lips turning blue or purple.

36. Children entering and exiting the bathroom did not immediately alert staff that CRUZITO was passed out on the ground.

37. Staff were not alerted until 11:26 AM, about five to six minutes after HOLVE sent him away.

38. Upon arrival, staff found CRUZITO unresponsive. An AED was applied but advised "no shock," indicating he had deteriorated into a non-shockable rhythm (PEA/Asystole) due to prolonged hypoxia.

39. EMS arrived at 11:35 AM (about 15 minutes after the choking began) and removed a large piece of pineapple via finger sweeps.

40. CRUZITO had to be transported out of the school on a stretcher while the EMTs performed CPR as they were walking him out. As this was occurring, his mother PLAINTIFF AMANDA CORBALA witnessed this and began shrieking in terror. She watched her unresponsive son being worked on by the EMTs and began to get emotional. CRUZITO was

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

transported to St. Rose Sienna Hospital, where he was diagnosed with an anoxic brain injury secondary to cardiac arrest secondary to choking episode on food. Plaintiff CORBALA was captured on police body-worn camera in an overwhelming state of fear and worry while awaiting information about her son's condition.

41.     CRUZITO never regained consciousness. He was declared brain dead and passed away on March 2, 2025, at 5:40 PM.  His mother, AMANDA, has been devastated by the premature, unnecessary, and unnatural loss of her beloved son CRUZITO.

## CAUSES OF ACTION

### COUNT I

42 U.S.C. § 1983 – Substantive Due Process (State-Created Danger)

(Plaintiffs SCOW and KELLEY on Behalf of the ESTATE OF CRUZITO TANK RUIZ v. Defendant HOLVE)
(Permitted to be Brought as a Survival Action)

42.     Plaintiffs incorporate the preceding allegations by reference.

43.     Defendant HOLVE, acting under color of state law, affirmatively placed CRUZITO in a position of actual, particularized danger that he would not have otherwise faced.

44.     HOLVE affirmatively directed CRUZITO, via physical gesture and verbal order, to leave the supervised area.  Students are required to follow staff's directions, so CRUZITO followed Defendant HOLVE's direction.

45.     By affirmatively isolating the child in a restroom, HOLVE restricted CRUZITO's access to adult assistance, immediate supervision, and timely emergency intervention, including CPR and Heimlich maneuvers. The affirmative isolation delayed notification to other staff and delayed emergency response in a situation where seconds and minutes materially affect survival and neurological outcome. Had CRUZITO remained in the supervised cafeteria with adult assistance immediately available, his likelihood of survival and meaningful recovery would have been substantially higher.

46.     The risk of death from an airway obstruction is obvious and foreseeable.

47.     Defendant HOLVE acted with deliberate indifference to a known risk. She recognized the

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052

Telephone: (702) 383-2864   Facsimile: (702) 383-0065

physical signs of distress (vomit, choking, hands to mouth, puffy cheeks) but consciously disregarded the risk of airway obstruction, treating the life-threatening emergency as a nuisance and sending CRUZITO to the bathroom. She considered that a nurse might be necessary but instead sent CRUZITO away from any available access to the nurse or any other adult.

48. As a direct result of being harmed by HOLVE's state-created danger of isolation away from adults, CRUZITO suffered conscious pain, suffering, terror, anoxic brain injury, and death. Plaintiffs Scow and Kelley, as Co-Administrators of the Estate, are entitled to an award of substantial compensatory damages for what CRUZITO experienced.

**COUNT II**

42 U.S.C. § 1983 – *Monell* Liability (Substantive Due Process) (Failure to Train)

(Plaintiffs SCOW and KELLEY on Behalf of THE ESTATE OF CRUZITO TANK RUIZ v. Defendant CCSD)
(Permitted to be Brought as a Survival Action)

49. Plaintiffs incorporate the preceding allegations by reference.

50. Plaintiffs are the duly appointed Co-Administrators of THE ESTATE OF CRUZITO TANK RUIZ and bring this action on behalf of the Estate pursuant to 42 U.S.C. § 1983 to recover damages for the conscious pain, suffering, and terror experienced by the decedent prior to death.

51. Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is a political subdivision of the State of Nevada and is an entity and a "person" within the meaning of § 1983.

52. At all relevant times, the decedent CRUZITO TANK RUIZ had a clearly established right under the Fourteenth Amendment to be free from affirmative state conduct that creates or substantially increases a known risk of serious harm, and from deliberately indifferent conduct that shocks the conscience. This right includes the right of a student during the school day to not be affirmatively placed in a position of heightened life-threatening danger without justification.

53. At all relevant times, CCSD maintained inadequate training, policies, and practices concerning the supervision and care of students experiencing acute medical emergencies, including choking and vomiting. CCSD failed to adequately train school staff regarding: (a) recognition of airway-compromising medical emergencies, including choking; (b) the

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

requirement that a student in medical distress remain under continuous adult supervision; (c) appropriate emergency response protocols when a student is actively choking or vomiting; (d) when staff must render immediate aid, summon medical assistance, or contact emergency services; (e) the dangers of isolating or separating a student during a medical emergency; and (f) the constitutional consequences of affirmative actions that increase a student's risk of serious harm or death.

54.     CCSD failed to provide meaningful, mandatory, or scenario-based training addressing these foreseeable medical situations, despite the routine presence of children under its care.

a. Choking is a recurrent and foreseeable pediatric emergency, particularly during eating. National public-health surveillance and peer reviewed analyses reflect both the frequency and the catastrophic potential of these events: between 2001 and 2016, national CDC based analyses reported 305,814 nonfatal choking injuries and 2,347 choking deaths among children ages 0–19; and a food specific analysis estimated that 111,914 children ages 0–14 were treated in U.S. emergency departments from 2001–2009 for nonfatal food related choking—about 12,435 children per year. These national figures are not limited to any single setting, but they underscore that choking events are common and potentially lethal wherever children are fed and supervised. CDC has also reported that a substantial share of pediatric choking-related emergency visits require hospital admission or transfer to a higher level of care. Consistent with that foreseeability, USDA data show that the National School Lunch Program alone served approximately 29.9 million children on an average school day in FY 2024. Given the known frequency and lethality of pediatric choking, and the massive number of meals consumed under school supervision, the need for school district training and written protocols for staff supervising meals—recognition of choking, immediate activation of emergency response, and prompt, appropriate first aid—was obvious, and the failure to provide such training reflects deliberate indifference to a known and

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

recurring risk of serious injury and death. (Sources relied upon: https://www.sciencedirect.com/science/article/abs/pii/S0165587621000781; https://europepmc.org/article/MED/23897916; https://www.cdc.gov/mmwr/preview/mmwrhtml/mm5142a1.htm; and https://fns-prod.azureedge.us/sites/default/files/resource-files/slsummar-2.pdf.

    b. On information and belief, CCSD did not provide cafeteria supervisors and student aides with any meaningful, mandatory, scenario-based training on responding to choking and airway obstruction in elementary school students beyond generic certification requirements, and did not train such staff that a student exhibiting signs of choking must remain under continuous adult supervision and must not be directed into isolation.

55. The need for training was obvious because CCSD knew, or should have known, that: (a) students regularly experience choking, vomiting, and similar medical emergencies during the school day; (b) school staff are required to make decisions affecting life-threatening conditions; (c) without proper training, staff would predictably respond by isolating, separating, or failing to supervise a child in medical distress; (d) separating a choking child from supervision creates a substantial and obvious risk of death; and (e) the consequences of such conduct include prolonged choking, panic, pain, and asphyxiation.

56. Despite this obvious risk, CCSD failed to implement adequate training or corrective measures, demonstrating deliberate indifference to the known and foreseeable risk of serious harm and death to students.

    a. On information and belief, CCSD's failure to implement and enforce adequate choking-response training and cafeteria emergency protocols was attributable to CCSD's final policymakers responsible for student safety training and supervision policies, and persisted despite the obvious and recurring risk of choking emergencies during school meals.

57. CCSD's failure to train was the moving force behind the constitutional violation suffered

by the decedent. As a direct and proximate result of CCSD's inadequate training: (a) school staff affirmatively separated and isolated the decedent while he was actively choking; (b) the decedent was left without appropriate supervision, assistance, or timely medical intervention; (c) the decedent experienced conscious pain, air hunger, panic, and terror while choking; and (d) the decedent ultimately died as a result of asphyxiation. The decedent's pain and suffering prior to death were foreseeable and preventable, and flowed directly from CCSD's deliberate indifference to the need for training.

58.    The conduct of CCSD employee HOLVE (undertaken pursuant to CCSD's failure to train) constituted affirmative conduct that placed the decedent in a position of greater danger than he would otherwise have faced. Separating a choking child from supervision during an acute medical emergency: (a) was reckless in light of the known risk; (b) served no legitimate pedagogical or safety purpose; and (c) shocks the conscience under the circumstances.

59.    Accordingly, CCSD is liable under *Monell* for the violation of the decedent's Fourteenth Amendment rights and for the pain and suffering endured prior to death.

60.    CCSD knew, or should have known, that assigning untrained staff to supervise students during lunch created an obvious and substantial risk of serious harm, as choking during meals is a common and well-recognized medical emergency.

61.    The need for proper training in this context was so obvious, and the consequences of failing to provide such training so predictable, that CCSD's failure to do so constituted deliberate indifference to the constitutional rights of students, including CRUZITO.

62.    CCSD's failure to train its employees was the moving force behind the violation of CRUZITO's Fourteenth Amendment substantive due process rights, as it directly caused staff to ignore his medical distress and to affirmatively place him in a more dangerous situation by sending him to the boys' restroom.

63.    Plaintiffs Scow and Kelley, as Co-Administrators of the Estate of CRUZITO, are entitled to recover compensatory damages for CRUZITO's conscious pain, suffering, emotional distress, anoxic brain injury, and death.

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

**COUNT III**

42 U.S.C. § 1983  (Deprivation of Familial Association)
(14th Amendment Substantive Due Process)
(State-Created Danger)

(Plaintiff CORBALA v. Defendant HOLVE)

64.     Plaintiff CORBALA incorporates the preceding allegations by reference.

65.     Plaintiff CORBALA possessed a constitutionally protected liberty interest in the companionship, society, and care of her son, CRUZITO.

66.     The 14th Amendment to the United States Constitution protects individuals from the deprivation of liberty without due process of law. Defendant HOLVE violated Plaintiff CORBALA's substantive due process rights by affirmatively creating a danger that resulted in CRUZITO's death, acting with deliberate indifference to the known risk of airway obstruction.

67.     Defendant HOLVE affirmatively placed CRUZITO in a position of actual, particularized and heightened danger that he would not have otherwise faced.

68.     HOLVE affirmatively directed CRUZITO, via physical gesture and verbal order, to leave the supervised area.

69.     By affirmatively isolating the child in a children's restroom area, HOLVE restricted CRUZITO's access to the life-saving medical treatment available in the cafeteria such as CPR and Heimlich maneuvers.  Further, the affirmative isolation delayed a call to emergency medical services in a situation where quicker access to those services would have dramatically increased CRUZITO's chance for recovery. CRUZITO would have most likely lived had he been allowed to remain in the lunchroom with access to assistance instead of an isolated bathroom in the presence of no adults. HOLVE clearly placed CRUZITO in more danger of death than he would have been had he remained in the lunchroom with the adults in the room.

70.     The risk of death from an airway obstruction is obvious and foreseeable.

71.     Defendant HOLVE acted with deliberate indifference to a known risk. She recognized the physical signs of distress (vomit, choking, hands to mouth, puffy cheeks) but consciously disregarded the risk of airway obstruction, treating the life-threatening emergency as a nuisance

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052

Telephone: (702) 383-2864   Facsimile: (702) 383-0065

and sending CRUZITO to the bathroom. HOLVE even considered that a nurse might be necessary but instead sent CRUZITO away from any available access to the nurse or any other adult.

72. As a direct result of being harmed by HOLVE's state-created danger of isolation away from adults, CRUZITO suffered conscious pain, suffering, terror, anoxic brain injury, and death.

73. HOLVE's affirmative removal of a choking and distressed CRUZITO from safety shocks the conscience and demonstrates a reckless disregard for CRUZITO's life.

74. HOLVE recognized the obvious and unreasonable risk of choking and airway obstruction to CRUZITO, and, with deliberate indifference, affirmatively exposed him to that risk without regard to the consequences by directing him into isolation and failing to initiate any emergency response.

75. As a result, Decedent died and Plaintiff CORBALA has been permanently deprived of her son's companionship. She is entitled to an award of substantial compensatory damages for the mental, physical, and emotional pain and suffering experienced and that with reasonable probability, will be experienced in the future.

**COUNT IV**

Violation of Nevada Constitution  (Deprivation of Familial Association)
(Art. 1, § 8 Substantive Due Process)
(State-Created Danger)

(Plaintiff CORBALA v. Defendant HOLVE)

76. Plaintiff CORBALA incorporates the preceding allegations by reference.

77. Plaintiff CORBALA possessed a constitutionally protected liberty interest in the companionship, society, and care of her son, CRUZITO.

78. Article 1, § 8 of the Nevada Constitution protects individuals from the deprivation of liberty without due process of law. Defendant HOLVE violated Plaintiff CORBALA's substantive due process rights by affirmatively creating a danger that resulted in CRUZITO's death, acting with deliberate indifference to the known risk of airway obstruction.

79. Defendant HOLVE, acting under color of Nevada law, affirmatively placed CRUZITO in

a position of actual, particularized and heightened danger that he would not have otherwise faced.

80. HOLVE affirmatively directed CRUZITO, via physical gesture and verbal instruction, to leave the supervised area.

81. By affirmatively isolating the child in a restroom area, HOLVE restricted CRUZITO's access to the life-saving medical treatment available in the cafeteria such as CPR and Heimlich maneuvers. Further, the affirmative isolation delayed a call to emergency medical services in a situation where quicker access to those services would have dramatically increased CRUZITO's chance for recovery. CRUZITO would have most likely lived had he been allowed to remain in the lunchroom with access to assistance instead of an isolated bathroom in the presence of no adults. HOLVE clearly placed CRUZITO in more danger of death than he would have been had he remained in the lunchroom with the adults in the room.

82. The risk of death from an airway obstruction is obvious and foreseeable.

83. Defendant HOLVE acted with deliberate indifference to a known risk. She recognized the physical signs of distress (vomit, choking, hands to mouth, puffy cheeks) but consciously disregarded the risk of airway obstruction, treating the life-threatening emergency as a nuisance and sending CRUZITO to the bathroom. She considered that a nurse might be necessary but instead sent CRUZITO away from any available access to the nurse or any other adult.

84. As a direct result of being harmed by HOLVE's state-created danger of isolation away from adults, CRUZITO suffered conscious pain, suffering, terror, anoxic brain injury, and death.

85. HOLVE's affirmative removal of a choking and distressed CRUZITO from safety shocks the conscience and demonstrates a reckless disregard for CRUZITO's life.

86. HOLVE recognized the unreasonable vomiting and choking risk to CRUZITO, was deliberately indifferent to it, and actually intended to expose CRUZITO to the risks without regard to the consequences to him. HOLVE affirmatively created a heightened danger to CRUZITO.

87. As a result, Decedent died and Plaintiff CORBALA has been permanently deprived of her son's companionship. She is entitled to an award of substantial compensatory damages for the mental, physical, and emotional pain and suffering experienced and that with reasonable

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

probability will be experienced in the future. To the extent any remedy is limited under Nevada law, Plaintiff CORBALA seeks at least declaratory relief and all other relief available at law or in equity for this violation.

**COUNT V**

Violation of NRS 41.1395 – Abuse or Neglect of a Vulnerable Person

(Plaintiffs SCOW and KELLEY on Behalf of THE ESTATE OF CRUZITO TANK RUIZ v. Defendants)
(Permitted to be Brought as a Survival Action)

88. Plaintiffs incorporate the preceding allegations by reference.

89. Decedent was a "vulnerable person" under NRS 41.1395(4)(e).

    a. At all relevant times, Defendant HOLVE and Defendant CCSD knew or had reason to know that CRUZITO was a vulnerable person, including because CCSD maintained and implemented CRUZITO's IEP and special education records and employed HOLVE as a Specialized Programs Teacher Assistant assigned to supervise and work with students receiving specialized services.

90. DEFENDANT HOLVE committed "Neglect," as defined by NRS 41.1395(4)(c), because she had assumed legal responsibility and a contractual obligation for CRUZITO's care and supervision during the school day, and she refused to provide services within the scope of that responsibility that were necessary to maintain his physical health during a life-threatening choking emergency, including keeping him under continuous adult supervision and promptly summoning emergency medical assistance, and instead affirmatively directed him into isolation.

91. Defendant CCSD is vicariously liable for HOLVE's acts and omissions under this statute.

92. Pursuant to NRS 41.1395(1), Defendants are liable for two times the actual damages.

    a. Defendant HOLVE acted with at least recklessness as contemplated by NRS 41.1395(2), and Plaintiffs are therefore entitled to recover attorney's fees and costs as allowed by that statute.

. . .

. . .

Page 20 of 26

**COUNT VI**

Negligence / Wrongful Death (NRS 41.085)

(Plaintiff CORBALA v. All Defendants)

93.    Plaintiff CORBALA incorporates the preceding allegations by reference.

94.    DEFENDANT HOLVE breached her duty of care by failing to utilize standard protocols in a choking emergency and by affirmatively directing a distressed student into isolation.

95.    DEFENDANT CCSD is vicariously liable for the negligent acts and omissions that DEFENDANT HOLVE committed within the course and scope of her employment.

96.    These breaches were the actual and proximate cause of the 15-minute delay in airway clearance and CRUZITO's suffering and death.

97.    Defendants are liable to PLAINTIFF CORBALA for a substantial amount of compensatory damages for her grief, sorrow, companionship, society, comfort and consortium, and damages for pain, suffering, disfigurement and death of CRUZITO.

**COUNT VII**

42 U.S.C. § 1983 – *Monell* Liability (Substantive Due Process) (Failure to Train)

(Plaintiff CORBALA v. Defendant CCSD)

98.    Plaintiff CORBALA incorporates the preceding allegations by reference.

99.    Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is an entity organized as a political subdivision under Nevada law and is a "person" and entity subject to suit under 42 U.S.C. § 1983. At all relevant times, CCSD acted through its final policymakers, administrators, and employees responsible for training, supervision, and student safety.

100.    Plaintiff CORBALA had a fundamental liberty interest in the care, custody, safety, and companionship of her child, protected by the Fourteenth Amendment's substantive due process clause.

101.    At all relevant times, CCSD maintained inadequate training, policies, and practices concerning the supervision and care of students experiencing acute medical emergencies, including choking and vomiting. CCSD failed to adequately train school staff regarding: (a)

recognition of airway-compromising medical emergencies, including choking; (b) the requirement that a student in medical distress remain under continuous adult supervision; (c) appropriate emergency response protocols when a student is actively choking or vomiting; (d) when staff must render immediate aid, summon medical assistance, or contact emergency services; (e) the dangers of isolating or separating a student during a medical emergency; and (f) the constitutional consequences of affirmative actions that increase a student's risk of serious harm or death.

102.    CCSD failed to provide meaningful, mandatory, or scenario-based training addressing these foreseeable medical situations, despite the routine presence of children under its care.

a. Choking is a recurrent and foreseeable pediatric emergency, particularly during eating. National public-health surveillance and peer reviewed analyses reflect both the frequency and the catastrophic potential of these events: between 2001 and 2016, national CDC based analyses reported 305,814 nonfatal choking injuries and 2,347 choking deaths among children ages 0–19; and a food specific analysis estimated that 111,914 children ages 0–14 were treated in U.S. emergency departments from 2001–2009 for nonfatal food related choking—about 12,435 children per year. These national figures are not limited to any single setting, but they underscore that choking events are common and potentially lethal wherever children are fed and supervised. CDC has also reported that a substantial share of pediatric choking-related emergency visits require hospital admission or transfer to a higher level of care. Consistent with that foreseeability, USDA data show that the National School Lunch Program alone served approximately 29.9 million children on an average school day in FY 2024. Given the known frequency and lethality of pediatric choking, and the massive number of meals consumed under school supervision, the need for school district training and written protocols for staff supervising meals—recognition of choking, immediate activation of emergency response, and prompt, appropriate first aid—was obvious, and the

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

failure to provide such training reflects deliberate indifference to a known and recurring risk of serious injury and death. (Sources relied upon: https://www.sciencedirect.com/science/article/abs/pii/S0165587621000781; https://europepmc.org/article/MED/23897916; https://www.cdc.gov/mmwr/preview/mmwrhtml/mm5142a1.htm; and https://fns-prod.azureedge.us/sites/default/files/resource-files/slsummar-2.pdf.

103. The need for training was obvious because CCSD knew or should have known that: (a) students regularly experience choking, vomiting, and similar medical emergencies during the school day; (b) school staff are required to make decisions affecting life-threatening conditions; (c) without proper training, staff would predictably respond by isolating, separating, or failing to supervise a child in medical distress; (d) separating a choking child from supervision creates a substantial and obvious risk of death; and (e) the consequences of such conduct include prolonged choking, panic, pain, and asphyxiation.

104. Despite this obvious risk, CCSD failed to implement adequate training or corrective measures, demonstrating deliberate indifference to the known and foreseeable risk of serious harm and death to students.

105. CCSD's failure to train was the moving force behind the constitutional violation suffered by Plaintiff CORBALA and the decedent. As a direct and proximate result of CCSD's inadequate training: (a) school staff affirmatively separated and isolated the decedent while he was actively choking; (b) the decedent was left without appropriate supervision, assistance, or timely medical intervention; (c) the decedent experienced conscious pain, air hunger, panic, and terror while choking; and (d) the decedent ultimately died as a result of asphyxiation. The decedent's pain and suffering prior to death and injuries were foreseeable and preventable, and flowed directly from CCSD's deliberate indifference to the need for training.

106. The conduct of CCSD employee HOLVE (undertaken pursuant to CCSD's failure to train) constituted affirmative conduct that placed the decedent in a position of greater danger than he would otherwise have faced. Separating a choking child from supervision during an acute medical

emergency: (a) was reckless in light of the known risk; (b) served no legitimate pedagogical or safety purpose; and (c) shocks the conscience under the circumstances.

107.     Accordingly, CCSD is liable under *Monell* for the violation of Plaintiff CORBALA's fundamental liberty interest in the care, custody, safety, and companionship of her child, protected by the Fourteenth Amendment's substantive due process clause.

108.     CCSD knew, or should have known, that assigning untrained staff to supervise students during lunch created an obvious and substantial risk of serious harm, as choking during meals is a common and well-recognized medical emergency.

109.     The need for proper training in this context was so obvious, and the consequences of failing to provide such training so predictable, that CCSD's failure to do so constituted deliberate indifference to the constitutional rights of students, including CRUZITO.

110.     CCSD's failure to train its employees was the moving force behind the violation of Plaintiff CORBALA's Fourteenth Amendment substantive due process rights, as it directly caused staff to respond inappropriately to his medical distress and to affirmatively place him in a more dangerous situation.

111.     As a result, Decedent died and Plaintiff CORBALA has been permanently deprived of her son's companionship. She is entitled to an award of substantial compensatory damages for the mental, physical, and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.     For the Special Administrators and Personal Representatives SCOW and KELLEY on behalf of the Estate:

> (1) General and special damages for civil rights violations, conscious pain and suffering, and medical expenses;
>
> (2) Double Damages: Pursuant to NRS 41.1395(1);
>
> (3) Attorney's Fees: Pursuant to NRS 41.1395(2) and 42 U.S.C. § 1988 and costs

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864     Facsimile: (702) 383-0065

allowed by law.

B.     For Plaintiff CORBALA:

    (1) General and special damages for civil rights violations, loss of companionship, society, and grief, and all damages permitted by Nevada's Wrongful Death Statute NRS 41.085.

    (2) Attorney's Fees: Pursuant to 42 U.S.C. § 1988 and costs allowed by law.

C.     For All Plaintiffs:

For such other and further relief as the Court deems just and proper.

DATED this 3rd day of March, 2026.

**LAGOMARSINO LAW**

ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864

**NAQVI INJURY LAW**
FARHAN R. NAQVI, ESQ. (#8589)
PAUL G. ALBRIGHT, ESQ. (#14159)
9500 W. Flamingo Rd., #104
Las Vegas, Nevada 89147
Telephone: (702) 553-1000

*Attorneys for Plaintiffs*

**JURY DEMAND**

PLEASE TAKE NOTICE that Plaintiffs, by and through their undersigned attorneys, hereby demand a trial of this matter by jury.

DATED this 3rd day of March, 2026.

LAGOMARSINO LAW

ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864

NAQVI INJURY LAW
PAUL G. ALBRIGHT, ESQ. (#14159)
9500 W. Flamingo Rd., #104
Las Vegas, Nevada 89147
Telephone: (702) 553-1000

*Attorneys for Plaintiffs*